Yes, Your Honors, Kenneth Seidel for the appellant, Morris Cerullo WorldEvangelism. In my opening, I know we've submitted extensive briefs that you've read. I want to provide some overview, because maybe a basic point might be missed. The heart of our appeal is a paragraph, one paragraph, in the district court's ruling on the breach of contract claim. This is on page 17 of the district court's decision. And the district court says, while a letter of credit is a contract between the applicant and the bank, there is no contract between any party and the beneficiary arising from the letter of credit. And the district court cites a case called Sue Che. Sue Che is a two-page opinion, very simple case. And it involved a situation where the beneficiary was drawing on a letter of credit for some goods that had been shipped. And the beneficiary was alleging that the bank had allowed two draws or a couple of draws to take place without demanding strict compliance with the letter of credit. And so the beneficiary was arguing that that created a contract by implication from the conduct of the bank that it would not rely on strict compliance with the letter of credit. And the district court in that case says, no, no. The letter of credit simply says explicitly that any waivers of failure to strictly comply with the letter of credit does not excuse future discrepancies. And so the district court in that case says there was no contract between the beneficiary and the bank. It's not saying that under a typical letter of credit situation, a letter of credit is not a contract with the bank. It does not say that. And it doesn't hold that. That's the decision. It's not. I'm a little confused about why we're in this. I mean, I thought your main appeal was with regard to a wrongful, what's the word? Wrongful dishonor. Dishonor claim, which requires a question of whether or not that's in the case and then how you prevail on it. But did you appeal anything about a breach of contract? Well, the court is citing that case for the principle that what the ministry was alleging as of count one in its second amended complaint for breach of contract for the failure to pay the. I understand that. But on appeal, are you challenging anything about the breach of contract ruling? Yes, it's wrong. I thought you were only mitigating the wrongful dishonor claim. Well, part of the issue in this case is whether you label a wrongful discharge, failure to honor, is different than a breach of contract. We say it's not. That it's a breach of contract as is alleged in the complaint, joined in the answer, and as alleged in the second amendment. But if you do the traditional wrongful dishonor claim, whether it is or isn't a contract, why does it matter whether what it is is a wrongful dishonor claim? Why are we worrying about this? Well, we contend it was in the case and it was litigated but decided incorrectly. The court rejected that claim based on this one paragraph, saying there was no contract between the bank and the ministry. And that's just clearly. Well, more likely, the beneficiary would be a third party beneficiary. So let's go forward from here. My point is, so the district court does not address the use, well, I'll call the UCC issues. It does not address whether this is a letter of credit, whether it's properly presented, whether there was fraud by the beneficiary. We create that argument in our brief. And those findings are all on the following pages, pages 17 to 24 of the district court's conclusions. In connection with the district court discussing the promissory estoppel claim, our count three. So the point I'm trying to highlight to the court is what we had to do was reconstruct, had the court properly considered the UCC issues, here is how the case should have come out. But if you read, for example, where we have conclusions that the district court is making, for example, there's a very critical conclusion on the next page, where the court is discussing the issue of whether the ministry could have reasonably relied on a promise to make a cause of action for promissory estoppel based on the facts. And the court throws in a sentence that says there is no actual letter of credit in this case. It describes the letter of credit as the forged document was never issued. And as a result, it is simply a fraudulent instrument. The court does not then discuss the impact of that, for example, under fraud by the beneficiary that would excuse the bank from honoring the letter of credit. This is a sentence in its conclusions on promissory estoppel. We're not appealing the court's ruling on promissory estoppel. So all of this, to the extent it relates to count three, is really irrelevant. The issue is, had the court not committed error in dismissing the breach of contract, a wrongful dishonor claim, what should the outcome have been? I answered that question. OK, go ahead. Why was it so, let me ask you this then, if it was so obvious that the dishonor claim was there, why was it necessary to even ask the district court for leave to amend prior to the time of trial? Or after trial, it was after trial. I would say. No, there was a motion before trial to specifically allege a UCC claim. Correct. And she denied that. She said, you're too close to trial, you're going to muck things up, and we're going to go on with what you've got. You should have done this a long time ago. So then you go to trial, and she keeps you to the allegations in the complaint. No, that's not true. What does she do? Well, on the eve of trial, there are motions in limine. One of the motions in limine was by the bank, maybe logically following your thought that she had ruled previously we weren't going to have UCC issues in the case. Let's stick to my ruling. The bank says, all right, I want an in limine ruling that we're not going to get into any kind of UCC relevant evidence. The court says, no, no, no, no. You raised that in your complaint. So I have a question about that. Or several. Was the declaratory judgment action as such also tried? Yes, yes. OK. And if the declaratory, so and there were UCC issues raised in the declaratory judgment claim. Correct. That's what they were about. And so suppose that that's, the counterclaims or the cross-claims were presumably for monetary relief. I don't know why you didn't specifically at that point raise the wrongful dishonor. But the question is whether, if you simply prevailed on the declaratory judgment on the ground that they, under the UCC, should have paid you, which is the equivalent of deciding the wrongful dishonor, are you, is that different relief? Are you any worse off? No. So what difference does it make whether it was in the cross-claim? But you see the court, the court goes through this reasoning and then, at the end, grants them. Well, it says you can't amend your cross-claim, but it's already in the original claim. Exactly. I mean, I would say the cross-claim is irrelevant, other than we get an express award. But if we win on the declaratory. Did the district court separately decide the declaratory judgment's questions? Yes. Well, she does in her ruling. The last point is judgment is entered in favor of the bank and against the ministry on the declaratory relief action. But she didn't really go through the UCC stuff. Correct. Even though she had said earlier that, in fact, those issues, I mean, something was raised with regard to the declaratory judgment action required looking at the UCC issues. Right, right. And to even highlight it, each side had an expert witness testifying as to whether this was a legitimate letter of credit. There was no objection by either side to any of the expert witness testimony. And so she finds that it's not a legitimate letter of credit. As you said, she called it a fraudulent instrument. Right. So under your analysis, you then still have to look at the UCC? Correct. Absolutely. And where does that get you? It gets you if you go through what we call the LC issues. You have the first issue of whether this thing was a letter of credit. And in broad terms. You said it wasn't a letter of credit. Yeah, but she was wrong. That's a conclusion that she made. Now, she does not articulate, because that's in her.  She called it a fraudulent instrument. She says it's not a letter of credit. It's just a phony piece of document that Wilkinson and Hammett produced together in Hammett's office. Right. So nothing. She said, but that's just not what the law is. OK, so she had turned to the UCC. She should have said what? Or she should have? Well, the first issue is, under the UCC, is this a letter of credit? And in general terms, it's the UCC. Well, isn't the real difference, if there is any, that under the UCC, given the independence principle, you would consider, say, apparent authority. But you would only do it with regard to the letter of credit itself and not the underlying transactions. And at least in the promissory estoppel analysis, she did look at the entire transaction and said your client's just, you know, Your client cannot rely. Just totally irresponsible, basically. Right. Now. Couldn't reasonably rely. There is a similar inquiry with regard to a parent. You don't, you mentioned a parent. I mean, he clearly didn't have actual authority. So in that sense, there was not a letter of credit, right? Well, but some of the cases we cite are cases like that. I mean, one of the cases that we cite, I think it's the Murphy case, involved a bank that had a cease and desist order from the comptroller of the currency, that they could not issue letters of credit. And the letter of credit in that case was exact. There was also an allegation that the board of directors hadn't approved it. Right. So you had clearly, as in that case, no actual authority for the issuance of the letter of credit. Well, the first thing is not an actual authority problem. It's that it might have been an illegal letter of credit, but it was illegal credit. It was a commitment they actually made. The argument here is that it was not a commitment that the bank, Qua Bank, made. But there was no reason for the bank to have known that at the time they entered into the transaction and parted with. I mean, the bank, I mean, your clients. The ministry, yes. And parted with the $3.5 million. They didn't, there was no evidence that they had. But the only way you get from here to there, is in an apparent authority theory, yes? Yes. And he was the regional manager of the bank. District court never decided any apparent authority question. She apparently, I don't know if she didn't think it was raised, or I don't know if it was adequately raised. Did she ever raise it? No. I don't think she focused on that, because as far as she was concerned, there was no, as she put it, there was no letter of credit. For her, that pretty much ended everything. That ended the analysis for her. For her, that's correct. That was it. Done and over. That's exactly my point, yes. This Wilkerson guy did have the authority to verify that there was a letter of credit. That's correct. And your client specifically went to his office and asked him to do that, and he did. Correct. So the question really is whether they, under the UCC or otherwise, were entitled to Rely on his apparent authority. Rely on his position or statements. And he was the regional manager that went into his office, you know, he had doors and security guards, and it looked like he was legitimate. And as we say, there's So that's what seemed to me to be the difference between focusing on the wrongful decider and focusing on the contract question or the promissory stop question. Because you focus on the wrongful dishonor and you have the independence principle there, then you simply look at whether your clients were sufficiently responsible or reliant with regard to the letter of credit alone because the whole point of the letter of credit is that they don't have to worry about anything else. They don't have to, correct. And if you're looking at it as a breach of contract question, you might have a broader inquiry. Correct. Well, I think properly interpreted, even a breach of contract would have come down to the same issue because the whole issue, there was no other contract other than the letter of credit. In other words, if you read the complaint and the cross complaint, they both attach the letter of credit and they say, we allege it was properly issued, presented and not paid. And they say, no, it wasn't. So there's no other something else, some other breach of contract. It's just that. Okay, why don't we, we'll save, I'll give you a minute for rebuttable. Let's hear from the other side. May it please the court, your honors, Ernest Wagner for Compass Bank. First of all, it's Compass Bank's position that the only thing appealed here was whether or not there was implied consent to try a different wrongful dishonor claim under 15B. They did not appeal the breach of contract, declaratory judgment or promissory stopple claims from the briefs. I want to answer one question you had to counsel about what the complaint pled first, because I think there's a misunderstanding. Look at the complaint, your honors. It very specifically does not plead UCC or Article V. You won't find it in there. That was deliberate and intentional. Which complaint, your complaint? The complaint. The original. Yes, the original complaint for declaratory judgment pleads that we didn't issue it, that it's fraudulent, and that even if a court were to find that we did, which we didn't, it's impossible to comply with on its own terms. It doesn't seek relief under the UCC. It doesn't cite the fraud exception. It does not seek any of the defenses available under the UCC or strict compliance or anything like that. It simply says we didn't issue it, it's the result of fraud, and even if a court were to find that we did, you still can find that you can't comply with it on its own terms because it's such a terrible instrument. It was drafted poorly. Now, with respect to the implied consent argument, we didn't try, we tried a promissory stopple, breach of contract and declaratory judgment action and not a wrongful dishonor, and that's important for several reasons. First of all, on the eve of trial, they moved to amend. We objected, and remember, we're talking about implied consent, so this is, if you're gonna evaluate consent, it's not what our opponents did, it's not really what the court did. They're focused on a motion to eliminate, it's what we did. We objected to the amended complaint. We moved to eliminate to exclude all evidence because we felt it was irrelevant. Can you tell me really specifically what the differences are? Nobody has really done that. What is the, I mean, this is, if this is, whatever this is, it is a letter of credit and it is governed by the UCC, and if he calls it a breach of contract, that still remains the case, that it is a certain kind of contract. It is a contract between somebody and somebody, right? And it is, for some purposes, governed by the UCC, so what kind of fine-tuned pleading would have been necessary to have a different trial than a trial that was had? Sure, if I may, just very briefly, to step back a second and just talk about letters of credit. I mean, letters of credit typically involve three parties, right? So you're gonna have a bank that's issuing it, an applicant, which is usually, but not necessarily always, a customer of that bank who's gonna make an application to the bank, please do this letter of credit, and then a beneficiary, in this case, would have been MCWE. The contract is between the applicant and the bank, right? The applicant asks the bank to issue the letter of credit. The beneficiary does not have any contractual relationship with the bank. There's no consideration, there's no mutuality, there's no deal at all. In fact, these two parties did not know each other before this complaint arose. We knew nothing about each other, and negotiated no arm's-length transaction at all. So here, though, you don't have an applicant, right? Hammett never came to the bank and made an application and asked Compass, please issue a letter of credit on our behalf. Compass never issued a letter of credit. Wilkinson and Hammett created a fraudulent one in their office, but Compass never issued one, and therefore, there can be no beneficiary. The person who was a vice president of the bank and the head of the branch, I mean, he wasn't some guy from outer space, signed the letter of credit, and when asked whether it was an actual letter of credit, he said it was, on behalf of the bank. Correct, he was part of the fraud, but he didn't, I don't think there's any dispute, he didn't have the actual authority to do that. Okay, he didn't have the actual authority. With respect to a parent, he shouldn't, as well. But he did have the actual authority with regard to the verification. Correct, but that doesn't mean it's actual authority to issue, which is what is important here in terms of, did he issue it or did he have actual authority to issue it? No, apparent no, for all of the reasons in the court's findings. Did the court ever make a finding with regard to apparent authority? I don't believe the court made a specific finding about apparent authority, Your Honor, but the court did find it wasn't issued, and if you look at all of the court's findings about the underlying transaction, it's clear that it wasn't a reasonable position. But am I right that, this is why I asked you for a very specific difference between whether it was pled as a breach of contract or not, or whether it was pled under the UCC rules about letters of credit. But I, because I gather that if it was, because it's, is or isn't a letter of credit, but that's what it is if it's anything, it, this independence principle applies, and I gather you wouldn't look at the underlying transaction. You could, Your Honor. So let's say in a different world, we had actually pled UCC, we'd asked the trial court to invalidate this instrument under the UCC. There is a material fraud exception to that, which we could have availed ourselves for. But I thought material fraud has to do with the presentation and the benefit sharing. Well, and the beneficiary. Exactly correct, Your Honor. And we did not plead that, nor did we seek to prove it. Because there wasn't any fraud in that regard, or at least, there was, nobody's ever adjudicated. I mean, the whole transaction's crazy, I understand. It is. But, you know, why this Arts guy went along with this, who knows. But that's exactly my point, Your Honor. So during discovery, the bank became convinced that Arts was involved. Now, we didn't further seek discovery on that because it wasn't necessary to prove that claim because it wasn't before the court. In order to keep proceeding, let's say the court grants leave to amend. First thing I do is ask for leave to take more discovery. I'm issuing subpoenas to Mr. Arts' bank. I want to see, did he get paid? Was he part of this? How far does it go up the chain? We never deposed Mr. Cirillo, which we would have done and asked for. I don't know if the notice is in the record, but I think the motions to compel are concerning that. There was much more discovery I would have done to defend against a UCC claim, a wrongful dishonor, and I would have presented evidence, or tried to, of course, we never did it, but I would have tried to prove that the beneficiary was part of the fraud. And it wasn't necessary for me to do so, and so we didn't go down that rabbit hole. Another point about the apparent authority is the issue with respondeat superior, which is essentially their argument in their briefs that under a theory of respondeat superior, we, the bank compass, should be held liable for Mr. Wilkinson's actions. This court has decided that issue in this type of fact pattern. I believe it's Northern Insurance Company of North America v. FedEx, and I apologize we didn't cite it in the briefs, but we did cite it in the underlying record, 189 Fed Third 914, and essentially this court held that where an employee commits a tort and or misconduct you can't hold the principal liable, essentially, for that intentional tort or misconduct. What happened in that case was there was a shipment, and an employee at the Memphis shipping facility stole the goods, and there was an attempt to make FedEx liable, and this court held you can't do that. I mean, just to step back from it all, the problem, and I understand there were a lot of technical problems, and I thought your response with regard to what discovery might have been different was helpful, but in the end, what you have here is at least some people at the company who were being somewhat cautious, and who turned down the first transaction, and then said we'll only do it with a letter of credit, and then when they got this letter of credit, they went to, which purported to be from the bank, they went and checked up on it to find out whether it was actually from the bank, and were told by a responsible person at the bank, I'll give it if the wrong person, whether it was actually the right person in terms of the verification, that it was a legitimate letter of credit, and the whole point of having a letter of credit, as I understand it, is that you don't have to worry about the transaction, you don't have to worry about whether it was a fraudulent, the underlying transaction, I mean, they may have felt that there was something scammy about this, but we have now done our due diligence, and we have the letter of credit that we wanted, and look at it, it says it's from Compass Bank, and we asked the official of Compass Bank, and he says it's a good letter of credit, so as between the bank and who, at least this guy does work for them, and did purport to be howling himself out as acting on behalf of the bank, where does one get the notion that it's the ministry that should be left holding the bank, leaving aside the fact that there were weird things that went on before all that? Well, it's probably why they tried a promissory stopful claim, Your Honor, is that they wanted to show, to look at the totality of the circumstances, say what they did was reasonable to go to him, but in order to have a letter of credit. I'm wondering whether you don't divorce out whether what they did on the letter of credit was reasonable, because the whole point of the letter of credit is not to worry about the rest of it. Sure, well, you still have to have a letter of credit. In order to have a letter of credit, you have to have a bank issued it. One way to distinguish all of the cases that they cite is in all of them, a bank issued a letter of credit, even if, you know. Well, in Murphy, for example, it was mentioned that the board of directors didn't approve it. Sure, but Murphy didn't consider any letter of credit issues or fraud, that wasn't what was on appeal. I mean, in more instructive cases, the Fifth Circuit's Coral Petroleum case. Oh, I'm sorry, I thought it was all about letter of credit issues, I'm confused. I don't believe it was similar to this fact pattern. I mean, you did have a vice president who issued it, and I don't believe the question was whether or not he was authorized to issue it. Instead, it was that there was an injunction that said they couldn't. That's different than here, where Mr. Wilkinson had no authority. Also, that is not necessarily the same as a situation where you basically have active fraud in a law offices away from the bank issuing this fraudulent instrument. That's not what happened here. Well, the beneficiary wouldn't have known that. I apologize, Your Honor. The beneficiary didn't know that, right? This letter of credit was drafted in the law offices of Mr. Hammond. It didn't know that, but the court did find, made a factual finding that it either knew or should have known that it was a fraudulent instrument without going through the laundry list of all the underlying facts. If you look at it, I'm no expert in letters of credit. I wouldn't be able to tell you one letter of credit from another. With due respect, Your Honor. It looks like a letter of credit. I respectfully disagree. I mean, on its face, you cannot comply with it. It's impossible, which is another reason they can never prevail. I mean, it says in order to- Well, you can't comply for one thing because the address doesn't exist, but how do they know that? They're supposed to go looking. I mean, they went to the guy. I mean, if they had not gone to Wilkinson's office in the bank and seen that he was, in fact, the director of this branch and sat down with him and had him tell him that this was a legitimate letter of credit, then obviously, they'd be in a completely different position, but they did that. Yes, Your Honor. However, on its face, I would submit to this court that it's impossible to comply with the letter of credit. Even if it were- How would the beneficiary know that, just looking at it? Yeah, so I'll try to explain. Just looking at it. So if you look at it, it says in order to present it, you must include the language in brackets, and then it doesn't have anything after that in brackets. You cannot follow the instructions on the face of the document. Well, frankly, if I'd gotten that, I would have thought, well, the language in brackets is probably, you know, basically like the address or the directions, the specifics, and they had the specifics. They happened to leave out the brackets, but the specifics were there. You could have followed what was there. If we were traveling under the UCC, which we're not. If we were what, I'm sorry? If we were traveling under the UCC, had there been a wrongful dishonor claim, which of course I'm saying did not happen, they still would have failed. If you look at the Coral Petroleum case out of the Fifth Circuit, I believe it's persuasive. The bank issued a letter of credit, but there was a mistake in the letter of credit by the bank, and part of that could be the beneficiary's fault or the applicant's fault, because everyone's working on it together. The honor was refused, and it was upheld because it was impossible to comply with the letter of credit on the face of the document because of the mistake, and the court said the beneficiary essentially has to pay the piper because it assumes the risk of this, although it's not supposed to assume the risk of the underlying transaction, right? If there were a letter of credit, which there's not. It does assume the risk of the letter of credit itself. You have to look at the document. You have to do your due diligence and make sure this is a valid letter of credit that on its face I can comply with, and here you can't, and as to the address issue, with all due respect, it took Mr. Hodge about 30 seconds to a minute to find out where you actually dealt with the letter of credit department when he wanted to present it and was running into trouble. He did a Google search and he couldn't get it. After, correct. Didn't respond to him. Correct. He didn't occur to him to go looking it up until he wasn't getting any response. Sure. My point being, though, that when you're looking at a letter of credit on its face, the Fifth Circuit has held that there has to be strict compliance, and that if there's a mistake of the letter of credit and it's impossible to comply with, that it's invalid and the dishonor is correct because you assume the risk of essentially the letter of credit itself, not the underlying transaction, mind you. I'm not talking about the independence principle or all the other stuff that happened, but the letter of credit. So how is a beneficiary supposed to guard against any deformities or problems with the contents? One, read it. You can consult with a lawyer, which is typical. You can consult with another bank, which is often the case. There are a number of things you can and should do before issuing a $3.5 million loan that wasn't done here, and again, a lot of that's in the record. In summation, since I have 10 seconds, COMPAS did not impliedly try a wrongful dishonor claim. This court should affirm the district court's judgment in all respects. Thank you. Okay, thank you. Yes, Your Honors. First of all, I want to point out, with respect to Mr. Wilkinson's authority in issuing the letter of credit, we point out that there was a pre-trial discovery sanction order entered against the bank, and we quote it in note five on page seven of our opening brief. And that just had to do with his admission that he actually did it. What does it have to do with anything? Because they couldn't deny that he did it. In other words, it was taken. He didn't say he did it on behalf of the bank, so I don't know what difference that makes. Well, but, the order says that it was to be taken as a fact that he admitted to issuing the letter of credit. And so. Well, he obviously issued it. Okay. You mean, you're saying that because he called it a letter of credit, that that proves that it was a letter of credit? No, I just had neglected to mention to you that there was that finding in the case that was not a disputed issue and the court doesn't even mention it. Probably. Well, because it's not relevant to anything. I mean, he assumes that he was the one who signed this thing. There's no doubt. I mean, he could have said I didn't sign it, but he said he did. Okay. As to the complaint joining the issue, the complaint seeks a declaration that the bank has no obligation. And among the things that they point out is that they allege there was an improper presentation of the letter of credit. So I think there's no way to decide their complaint without getting- And the district court said that, right? The district courts did think that they had raised a UCC question. Right. She said that in terms of the motion of Fleming. They had raised a UCC question. The third point I want to raise is, I don't know what the FedEx case is that he cited, but I still think the basic issue is that this guy had apparent authority for this transaction. You certainly didn't say very much about apparent authority in your briefs anywhere. And finally, on the- Did you? Did you ever really try to litigate apparent authority as such? Yeah, I didn't try the case. Wow, whomever, not you. Yeah. I don't believe it was litigated, no. But I think it was clear that he did have apparent authority. I think for all the factual reasons that you point out, what more can you do but go into the- Yes, but we don't have a finding, and it appears that we don't have a finding maybe because nobody asked her, the district judge. Well, maybe. Finally, Coral Petroleum, yes, does deal with strict compliance, which the bank could have done. The beneficiary has to strictly comply with the documents to be presented, but they didn't do that here. In other words, the first two presentations, there were no objections based on any defect in the instrument that they presented, and so they waived them under the preclusion principle. Well, what about this notion that you should have known by looking at this thing that it was fraudulent because it says, accompanied by a signed and dated statement, worded as follows with the instruction in brackets, the heiring complied with, and there was no instruction in brackets. Are you reading from the letter credit? Yes. Okay. That's what we were talking about before with your opposing counsel. He said anybody should have known this because if he read it carefully, he would have seen there was something wrong with it because it says a statement worded as follows with the instruction in brackets, the hearing complied with, and there was no statement in brackets. It is possible to have a document so poorly drafted that it doesn't constitute a letter of credit, and we cite the Bozo case involving a document that I would say doesn't even purport to be a letter of credit, but the court said it was sufficiently ambiguous to allow the case to go forward to try it. Here we have an instrument that says irrevocable standby letter of credit. It has the basic principles of a letter of credit, which is the banks, as we hereby establish our irrevocable standby letter of credit in your favor, and it states the amount which would be available by payment of your drafts drawn on site. Those are the essential elements of a letter of credit, and these details within the language of this would be types of things that maybe could be raised if you objected to the presentation, but there was no objection to the presentation in this case. Okay, thank you. Thank you, Your Honor. The matter is submitted.
judges: Pregerson, Paez, Berzon